ROBERT G. MAWDSLEY, Corporation Counsel Waukesha County
You have asked a number of questions concerning the interpretation and implementation of chapter 55, Stats., and other sections pertaining to protective placements. Many of these questions have been generated by recent legislative revisions.
Section 55.06(18), which allowed persons to request a voluntary protective placement under chapter 55, has been repealed. Ch. 379, Laws of 1981. However, a person now may consent to enter certain facilities without protective placement under newly created section 55.05(5)(a). Your first set of questions relate to these changes and will be answered in narrative form without restating each question.
Section 55.05(5)(a) provides that a person who is "legally and actually capable of consenting" may consent to enter certain facilities without protective placement under section 55.06. The word "legally" limits such consent to those persons who have not been found incompetent under section 880.33. This conclusion logically flows from the parallel provision of section55.05(5)(b) which provides that guardians of persons who have been found incompetent under section 880.33 may consent to admission to certain facilities without a protective placement under section 55.06. The term "actually capable" is a subjective standard to be applied initially by the staff of the facility where placement is sought. Although no criteria are set forth for making this determination, the ultimate question is whether the person is, in fact, voluntarily agreeing to this course of action with an informed understanding of what is to be done.
The elimination of what you referred to as "voluntary protective placement" under former section 55.06(18) is not inconsistent with the stated preference for voluntary protective services under section 55.05(3). An initial distinction must be made between placement and services.
Under section 55.06(1) "a protection placement under this section is a placement of a ward for the primary purpose of providing care and custody." This definition distinguishes it from "protective services" which are those services listed under section 55.04(1)(a). Protective *Page 196 
services include placement with placement being a discrete aspect of the protective service system.
The words "legally and actually capable" appear only in section55.05(5), pertaining to admissions without court involvement, and do not appear in section 55.05(2), relating to conditions required for protective services. Under section 55.05(2)(b), any interested person may request protective services on behalf of a person in need of services. Further, a guardian may request and consent to protective services on behalf of the guardian's ward, thereby eliminating any need for standards of consent by the ward.
Notwithstanding the "legally and actually capable" language of section 55.05(5)(a), the treatment director of a facility may temporarily admit an individual to an inpatient facility when there is reason to question the competency of such individual. Sec. 51.10(7), Stats. The treatment director must apply to the court for appointment of a guardian within forty-eight hours of the time of admission, and the individual may remain at the facility pending appointment of such guardian. There is no authority under section 51.10(7) for retaining the individual beyond the forty-eight hour time limitation stated therein and, therefore, further retention of the individual is possible only by complying with involuntary commitment provisions, emergency detention measures or voluntary admission standards elsewhere within chapter 51.
In this latter respect, it obviously is dangerous to discuss and attempt to apply interchangeably the provisions of chapter 51, the Mental Health Act, and those contained in chapter 55 except where specific cross-references appear or where the legislative intent is so clear as to admit of no doubt whatsoever. Further, it is virtually impossible to discuss all of those situations and means under which an individual who was temporarily admitted might later be the subject of a more permanent admission.
You next inquire concerning the powers and duty of guardians under section 55.05(5)(b)2., which provides:
 Guardians of persons who have been found incompetent under s. 880.33 may consent to admission to a nursing home if the person is admitted directly from a hospital inpatient unit for recuperative care for a period not to exceed 3 months, unless the hospital admission was for psychiatric care. Prior to providing that consent, *Page 197 
the guardian shall review the ward's right to the least restrictive residential environment and consent only to admission to a nursing home that implements those rights. Following the 3-month period, a placement proceeding under s. 55.06 is required.
This provision prohibits guardians from consenting to any admission to a nursing home if the person was admitted to the hospital for psychiatric care. This prohibition relates only to the condition for which the patient was most recently admitted to the hospital and not to some previous admission for psychiatric care.
Recognizing that this discussion is limited to protective services and to admissions without court involvement, it is my opinion that section 55.05(5)(b)2., as quoted above, prohibits any guardian appointed under section 880.33 from consenting to admission to a nursing home unless the person is admitted directly from a hospital inpatient unit. See also sec. 880.38(1), Stats. Obviously, there are other situations when and reasons why a guardian might seek nursing home care for a ward other than the voluntary admission without court involvement of an adjudicated incompetent for the purpose of providing those protective services anticipated under chapter 55.
You next raise questions concerning temporary placement transfers of wards by their guardians to inpatient psychiatric facilities for purposes of diagnosis or treatment.
Section 55.06(9)(d) provides for temporary placement transfers "for the purpose of psychiatric diagnostic procedures for a period not to exceed 10 days." Moreover, "such period may not be extended for the purpose of providing psychiatric treatment except in the manner provided in par. (e)." Therefore, such transfer for performing diagnostic procedures cannot extend beyond ten days even if psychiatric treatment is necessary or desirable unless the additional procedures set forth under section 55.06(9)(e) are followed.
Section 55.06(9)(e) allows temporary transfers for emergency acute psychiatric inpatient treatment but "[s]uch treatment period may not exceed 15 days, including any transfer under par. (d)." You specifically ask whether diagnosis and treatment combined, therefore, can total twenty-five days or whether treatment is limited to five additional days if the diagnosis takes ten days. *Page 198 
Subsection (9)(e) permits a fifteen day placement for psychiatric inpatient treatment. I read that provision to clearly limit the period of confinement to fifteen days even if part of that time is used for psychiatric diagnosis rather than for treatment. Once the fifteen day period elapses, the provisions of chapter 51 must be used if continued in-patient treatment is sought. This is made clear in the last sentence of section55.06(9)(e) which provides that "[a]ny application for continued psychiatric inpatient treatment requires proceedings under s.51.20 or 51.45(13)." Moreover, section 55.06(9)(a) expressly provides that "[p]lacement under this section does not replace commitment of a person in need of acute psychiatric treatment under s. 51.20 or 51.45(13)."
It is my opinion that the court lacks discretion to extend these periods. If the Legislature wanted to give courts this discretion, it would have provided for temporary detention for a reasonable time rather than using specific ten day and fifteen day periods. In the alternative, the Legislature could have provided that diagnosis or treatment may not exceed fifteen days "unless otherwise ordered by the court" or "unless the court deems that a reasonably longer period of time is necessary to complete diagnosis or treatment."
The above conclusion is consistent with the overall purpose of the protective services system which is "designed to encourage independent living and to avoid protective placement whenever possible." Sec. 55.02, Stats. It is also consistent with the policy underlying chapter 55 which is "to place the least possible restriction on personal liberty and exercise of constitutional rights consistent with due process and protection from abuse, exploitation and neglect." Sec. 55.001, Stats.
You next ask whether sections 55.05(5)(a) and 55.06(9)(d) and (e) can be reconciled with section 51.10(8) which provides that "an adult for whom a guardian of the person has been appointed under ch. 880 because of the subject's incompetency may be voluntarily admitted to an inpatient treatment facility under this section only if the guardian and the ward consent to such admission." These sections are compatible and may be employed under different circumstances.
Section 55.05(5)(a) provides for a form of protective service which is available without court involvement in contrast to protective placements. Section 55.06(9)(d) and (e) has as its primary purpose *Page 199 
the providing of appropriate care and custody for a ward following petition, notice and hearing in the appropriate court. Section 55.06(9) applies even when the protective placement in a psychiatric facility is involuntary and without the consent of the ward or where the ward is unable to consent.
On the other hand, section 51.10 is entitled "voluntary
admission of adults." Section 51.10(8) provides that the ward may be voluntarily admitted "under this section." Thus, subsection (8) must be read in the context of the rest of section 51.10 and of the entire Mental Health Act. The ward who, along with his guardian, voluntarily consents to admission must satisfy the criteria for voluntary admissions set forth in section 51.10(4).
Under the Mental Health Act, it is the policy of the state to assure the provision of a full range of treatment and rehabilitation services for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse. Sec. 51.001(1), Stats. In some respects, the provisions of chapter 51 are more specific than those in chapter 55 while in other respects they are more pervasive when one compares such things as the goals to be achieved, the persons eligible for various programs and the means of providing for those eligible persons.
In contrast to the sections discussed above under chapter 55, section 51.10(1) provides that an adult desiring admission to an approved inpatient treatment facility may be admitted upon application with the approval of the treatment director of the facility, the director of a center for the developmentally disabled and the director of the appropriate community board established under sections 51.42 and 51.437. The criteria for voluntary admission to any inpatient treatment facility must be based on an evaluation that the applicant is mentally ill or developmentally disabled or is an alcoholic or drug dependent and that the person has the potential to benefit from inpatient care, treatment or therapy. Sec. 51.10(4), Stats. The remaining portions of section 51.10 further demonstrate the differences between this voluntary admission program and the chapter 55 services and placements.
Section 51.10 provides a self-contained procedure for the voluntary admission of adults to inpatient treatment facilities. Subsection *Page 200 
(8) merely adds to what precedes it the requirement that both the guardian and the ward must consent to such voluntary admission.
Your last series of questions relate to section 55.06(11)(c) which provides that "upon a finding of probable cause under par. (b), the court may order temporary placement up to 30 days pending the hearing for a permanent placement, or the court may order such protective services as may be required." The nature of this provision is such that the court is required to order a permanent placement or protective services within thirty days after the person was detained. As this period of detention is an involuntary restraint on the individual, the power to extend the thirty-day limitation cannot be inferred but must be found in clear and unambiguous statutory language. As none exists here, it is my opinion that the thirty-day limitation is absolute.
In conclusion, I direct your attention and that of other readers to the requirements to be observed by district attorneys and corporation counsel when requesting an opinion of the attorney general as set forth in 62 Op. Att'y Gen. Preface (1973).
BCL:DPJ
 *Page 1